IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KONG HONG USA INC, | No. C-06-00804 EDL |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL CHERTOFF, | |
| Defendant. | |

Plaintiff Kang Hong USA filed this case pursuant to the Administrative Procedures Act, 5 U.S.C. § 706, et seq., seeking review of the denial by the United States Citizenship and Immigration Services ("CIS") of: (1) two Form I-140 Immigrant Petitions for Alien Worker filed by Kang Hong on behalf of its President, Ms. Zhong; and (2) two concurrently filed Form I-485 Applications to Register Permanent Residence or Adjust Status filed by Ms. Zhong on behalf of her husband Zun Hong Ke and her son Xiao Ke. The Court held a hearing on the parties' cross-motions for summary judgment on October 24, 2006. For the reasons stated at the hearing and set forth below, the Court issues the following Order.

**STANDARD OF REVIEW**

The Administrative Procedures Act guides this Court's review. See 5 U.S.C. § 706(1), 706(2) (A court may set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and compel the agency to take actions "unreasonably withheld or unreasonably delayed."). A court may not substitute its judgment for that of the agency. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). An agency action must be upheld as long as the agency "considered the relevant factors and articulated a rational

connection between the facts found and the choice made." Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, 462 U.S. 87, 105 (1983). A court must defer to the agency's expertise, but that deference is not unlimited and should not be exercised if the agency fails to articulate a reasoned basis for its decision. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989); see also Baltimore Gas & Elec. Co., 462 U.S. at 105. In visa petition proceedings, the ultimate burden of proving eligibility for the benefit rests with the petitioner. 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not inadmissible under any provision of this chapter, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be."); Pazcoguin v. Radcliffe, 292 F.3d 1209, 1213 (9th Cir. 2002).

**FACTS**

Chengdu Kanghong Pharmaceutical Co. is a Chinese company established in 1994 and engaged in the manufacture and sale of Chinese and Western medicines and pharmaceutical products. Administrative Record ("AR") at 490-544. Ms. Zhong was employed abroad as the deputy manager of Chengdu Kanghong. AR at 562. In March 2001, Kang Hong USA ("Plaintiff" or "Petitioner") was incorporated in California as a subsidiary of Chengdu Kanghong. AR at 189, 199. Plaintiff claims to be engaged in import/export trading (AR at 194), travel (AR at 194) and business and real estate projects (AR at 190). Also in March 2001, Chengdu Kanghong agreed to purchase 200,000 shares or 100% of Plaintiff's outstanding shares for $200,000, which was provided by a third person who owed a debt to Chengdu Kanghong. AR at 189. This transaction was memorialized in a Notice of Transaction and Stock Certificate issued to Chengdu Kanghong. AR at 214-15.

In September 2003, Plaintiff filed a Form I-140 visa petition for Ms. Zhong as its President. AR at 613. In the Form I-140, Kang Hong USA claimed to have a total of $152,484 in gross income and seven employees. AR at 614. The I-140 states that Ms. Zhong would be employed as the President with a salary of $42,000. AR at 614. The Form I-140 also described Ms. Zhong's duties

2

as President. AR at 777.

In September 2004, the California Service Center of the United States Citizenship and Immigration Service ("CSC") issued a Request for Evidence seeking further evidence regarding the I-140 petition. AR at 628-631. In October 2004, before responding to the Request for Evidence, Plaintiff filed a second Form I-140 on behalf of Ms. Zhong. AR at 193. The second Form I-140 is substantially similar to the first one and indicates that Ms. Zhong will be employed as the President of Kang Hong, which has nine employees, at a monthly salary of $3,500. AR at 194. Her duties are essentially described the same as in the first Form I-140. AR at 191. In December 2004, Plaintiff responded to the Request for Evidence from the first Form I-140. AR at 632-771.

In April 2005, the CSC denied both petitions. AR at 54-61. Plaintiff filed appeals for both Form I-140 petitions. AR at 31, 35. In December 2005, the Administrative Appeals Office ("AAO") issued two substantially similar decisions upholding the denial of the I-140 petitions. AR at 2-14; 15-28.

Ms. Zhong had also filed two Form I-485 Applications to Register Permanent Residence or Adjust Status, to register permanent residence for herself, her husband and her son. AR at 71-84; 568-75. These were denied on April 4, 2005 based on the requirement that the applicant first have an approved employment-based immigration petition and the denial by CSC of the Form I-140 Petitions for Ms. Zhong. AR at 52-53.

**DISCUSSION**

A United States employer wishing to employ an alien permanently in the United States must file a Form I-140 Immigration Petition for Alien Worker. 8 U.S.C. § 1153(b)(1)(C). The Petition must establish that the beneficiary has been previously employed by a foreign company and seeks to remain in the United States to continue employment with that same employer (or a subsidiary or affiliate thereof) in a managerial or executive capacity. Id. ("An alien is described in this subparagraph if the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same

employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive."). Pursuant to this section, the petitioning company must show the managerial or executive capacity of the alien and a qualifying relationship between the foreign and domestic company. Id.; 8 C.F.R. § 204.5(j). In this case, the AAO denied Plaintiff's Petitions on the grounds that there had not been a sufficient showing that Ms. Zhong was engaged primarily in a managerial or executive capacity or that there was a qualifying relationship between the foreign employer and the domestic employer.

**Managerial or executive capacity**

Pursuant to 8 U.S.C. § 1101(a)(44)(A),

> The term "managerial capacity" means an assignment within an organization in which the employee primarily--
> (i) manages the organization, or a department, subdivision, function, or component of the organization;
> (ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.
> A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

Pursuant to 8 U.S.C. § 1101(a)(44)(B),

> The term "executive capacity" means an assignment within an organization in which the employee primarily--
> (i) directs the management of the organization or a major component or function of the organization;
> (ii) establishes the goals and policies of the organization, component, or function;
> (iii) exercises wide latitude in discretionary decision-making; and
> (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

At the hearing on October 24, 2006, Defendant informed the Court that by appealing to the AAO, Plaintiff was automatically entitled to supplement the record with more evidence. Plaintiff did not contend otherwise. Despite this opportunity, Plaintiff did not provide additional detail about the percentage of time spent on managerial or executive duties. The AAO determined that Petitioner had not made a sufficient showing that Ms. Zhong was *primarily* engaged in a managerial or

4

executive capacity.

Specifically, the AAO found that examination of the description of job duties as required by the regulations (8 C.F.R. 204.5(j)(5)) provided "little insight into the true nature of the tasks she will perform in the United States." AR at 8, 21. For example, the job description stated that Ms. Zhong "formulated strategic plans and goals," "had been in charge of policy-making concerning franchisee arrangements," and "streamlined petitioner's focus on wholesale distribution of the overseas company's herbal products as well as the export of U.S.-approved antibodies," but failed to specifically define the company's goals and objectives or clarify exactly how Ms. Zhong performed the duties. AR at 8; see also AR at 21 (citing Fedin Bros. v. Sava, 724 F. Supp. 1103 (E.D. N.Y. 1989) ("Nowhere is there any description of how, when, where, and with whom these duties occurred. No specific situations, circumstances or occurrences are mentioned. Such evidence fails to comply with 8 C.F.R. § 214(1)(3), which states that a petition for an intracompany transferee must include: "[e]vidence that the alien will be employed in an executive, managerial ⋯ capacity, including a *detailed description of the services to be performed.*" 8 C.F.R. §  214(1)(3)(emphasis added).")).

Plaintiff argues that Fedin Bros. is not analogous because here, there is specific information, in the form of the franchise agreement with Great Earth (AR at 422; 1082), the patent applications (AR at 457-473) and the real estate development project (AR at 418). However, these documents do not themselves show Ms. Zhong's involvement.

The AAO further determined that even the more detailed portions of the job description did not show that Ms. Zhong worked primarily in a managerial or executive capacity. AR at 8, 21. Specifically, the job description states that Ms. Zhong is responsible for negotiating contracts and distributing new pharmaceutical drugs in China and herbal products in the United States, developing new sales channels and reviewing patent applications. AR at 8, 21. The AAO found, however, that these duties are "more akin to operational tasks associated with selling, importing and exporting pharmaceutical products," and that it "was not possible to conclude that the beneficiary's performance of her duties will be primarily executive rather than the performance of duties that include the daily tasks associated with operating an import and expert company." AR at 21, 8

5

1  (citing Matter of Church Scientology International, 19 I&N Dec. 593 (Comm. 1988) ("An employee
2  who primarily performs the tasks necessary to produce a product or to provide services is not
3  considered to be employed in a managerial or executive capacity."). Importantly, the AAO observed
4  that petitioner failed to indicate the proportion of time spent by Ms. Zhong in qualifying duties and
5  non-qualifying duties. AR at 21; see also Republic of Transkei v. INS, 923 F.2d 175, 177 (D.C. Cir.
6  1991) (burden on petitioner to document proportion of qualifying duties to non-qualifying duties).

7        The AAO also determined that Petitioner's December 1, 2004 response to the request for
8  more information did not satisfy the regulations. Specifically, Petitioner stated that Ms. Zhong was
9  "accountable for the company's position as a franchisee of U.S. Great Earth Companies to distribute
10 health products to Asian countries," and "is responsible for increasing sales of products and
11 reviewing patent applications. AR at 8, 21-22. The AAO found that these duties were not
12 sufficiently specific and "at most demonstrate the beneficiary's [Ms. Zhong's] active involvement in
13 the operational tasks of an import/export company." AR at 8, 22.

14       Finally, the AAO stated that the description of Ms. Zhong's tasks associated with creating an
15 investment and real estate line of business and a travel agency business only confused the record.
16 AR at 9, 22. While the description states that Ms. Zhong "reviewed all sales agreements,
17 incorporation documents, and leases," "approved presentation by the Vice President on personnel
18 decision, business partner selections and franchisee arrangements," and "provided instruction on
19 advertising campaigns and the establishment of sales  networks," the AAO determined that this
20 information related primarily to the import/export business. AR at 9, 22. The AAO pointed out
21 several discrepancies in the record that led it not to believe that Petitioner was engaged in a real
22 estate investment and travel agency business or that Ms. Zhong was overseeing those businesses.
23 AR at 9-10, 22-23. Those discrepancies included: (1) the business license for the addresses on the
24 petition indicating that the business is "Service-Interperter [sic];" (2) a February 2003 Agreement
25 for Sale of Business in Exchange for Stock for the travel agency business and Plaintiff as well as a
26 lease agreement dated September 2004 between Plaintiff and the travel agency stating that the
27 premises will be used for travel agency and TV repair; and (3) invoices for the herbal supplement
28 business with the name Tian Yuan with no evidence that Tian Yuan was a subsidiary. AR at 9, 22.

1 The AAO stated that these inconsistencies suggest that the businesses may have been "created for
2 the appearance of a more developed organization and the appearance that the beneficiary has several
3 subordinates performing various aspects of the petitioner's business." AR at 9, 22.

4 With respect to the travel agency business, the AAO specifically observed that the lease for
5 the premises contained dates and names of the parties in different typeface than that used throughout
6 the remainder of the lease agreement and that the lessor is the same entity that Petitioner claims to
7 have purchased months prior to that. AR at 10, 23. The AAO also stated that the photographs of the
8 premises appeared to have been altered. Id.  The AAO pointed out that the record contained copies
9 of bank statements addressed to Petitioner at the address of the travel agency and copies of utility
10 bills addressed to Petitioner's claimed address indicating that the business is a TV repair shop. AR
11 at 10, 23. These inconsistencies cast doubt for the AAO on the legitimacy of Plaintiff's businesses.
12 See Matter of Ho, 19 I&N Dec. 582, 591 (Mar. 17, 1988) ("Doubt cast on any aspect of the
13 petitioner's proof may, of course, lead to a reevaluation of the reliability and sufficiency of the
14 remaining evidence offered in support of the visa petition."). Accordingly, the AAO concluded: "In
15 this matter, the discrepancies and errors catalogued above lead the AAO to conclude that the
16 evidence of the beneficiary's eligibility is not credible." AR at 10, 23.

17 In its motion for summary judgment, Plaintiff essentially argues that the AAO erred because
18 the evidence submitted by it in support of the Form I-140 was sufficient to show that Ms. Zhong
19 worked primarily in a managerial or executive capacity. Given the deferential standard under which
20 this Court reviews the AAO's decision, the Court cannot say that the AAO's decision was arbitrary
21 or capricious.

22 With respect to the inconsistencies in the record as noted by the AAO, Plaintiff states that the
23 record clearly shows a real estate business (AR at 224-26; 418), a travel agency business (AR at
24 224-26), and documentation of contracts with Life Cycle Herbal Products (AR at 433). However,
25 Plaintiff has failed to show how these documents discharge its burden with respect to the issues
26 noted by the AAO about these enterprises. Significantly, Plaintiff does not address the AAO's
27 observation that the record appears to reflect the lease of premises by Plaintiff from the travel
28 agency company that Plaintiff supposedly already owned.

7

1  Further, Plaintiff notes that the record contains evidence that Tian Yuan is owned by
2  Plaintiff; specifically, the California Business Corporate Record (AR at 365); Tian Yuan's customer
3  list (AR at 367-69); customer invoices for nutritional supplements, one of Plaintiff's primary
4  business activities (AR at 371-413); and phone bills showing the same address as Plaintiff (AR at
5  300, et seq.). None of these documents on their face, however, show Plaintiff's ownership of Tian
6  Yuan. The record contains checks showing payments of telephone bills by Tian Yuan (AR at 328,
7  333), but it is not clear whether those payments are for Plaintiff's bill or Tian Yuan's. Either way,
8  this is tenuous evidence that Tian Yuan is owned by Plaintiff.

9  Plaintiff also argues that the discrepancy in the addresses noted by the AAO is "minor" and
10 not related to Ms. Zhong's capacity, and that the AAO erred by not asking for further information
11 about this discrepancy. Plaintiff offers no authority that the AAO had a duty to seek more
12 information in those circumstances. Moreover, while minor discrepancies in themselves are not
13 reason to question an alien's credibility (Spencer Enterprises v. INS, 345 F.3d 694 (9th Cir. 2003)
14 (although numerous discrepancies in a business plan can raise serious concerns about a business'
15 viability)), Plaintiff cites no authority that the AAO must ignore such discrepancies.

16 Plaintiff also argues that the job description and all information provided by Plaintiff shows
17 "clearly" that Ms. Zhong was engaged in managerial or executive capacity duties. Plaintiff quotes
18 extensively from the job description document to show that the duties are managerial or executive.
19 AR at 191 (Ms. Zhong "led the company to increase sales," "oversees the company's contracts and
20 negotiations," "streamlined petitioner's focus on wholesale distribution of . . . products," "directed
21 creation of corporate arrangements to facilitate importation of herbal medicines," "reviewed
22 company's patent applications," "has been chief executive in charge of strategic plans and goals,"
23 "directed the company's additional line of business in U.S. investment and real estate projects last
24 year," "reviewed all relevant sales agreements, incorporation documents and leases," "approved
25 presentations by the Vice President on personnel decisions," "implemented the annual budget and
26 procurement"). The AAO did consider this evidence and found it to be lacking in detail as to what
27 percent of time was spent on managerial or executive duties versus other non-qualifying duties;
28 Plaintiff did not meet its burden of showing as required by the statutes that Ms. Zhong was

8

"primarily" engaged in her arguably managerial and executive duties.

Plaintiff argues that because Ms. Zhong supervised a group of professionals who shielded her from performing day-to-day tasks involved in producing a product or providing a service, she qualifies as a manager or executive. 8 C.F.R. § 204.5(j)(4)(i) ("A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of his or her supervisory duties unless the employees supervised are professional."). A "professional" means: "one of the occupations listed in section 101(a)(32) of the Act, as well as any occupation for which a United States baccalaureate degree or its foreign equivalent is the minimum requirement for entry into the occupation." 8 C.F.R. § 204.5(k)(2); 8 U.S.C. § 1101(a)(32) ("The term "profession" shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries."). Plaintiff argues that the people reporting to Ms. Zhong, some of whom have a baccalaureate degree and others who do not, clearly are professionals. AR at 228-29.

Because this argument was not specifically presented to the AAO, it cannot be raised here. Barron v. Ashcroft, 358 F.3d 674, 677 (9th Cir. 2003) ("It is a well-known axiom of administrative law that "if a petitioner wishes to preserve an issue for appeal, he must first raise it in the proper administrative forum."). Plaintiff did raise the issue of Ms. Zhong's subordinate staff relieving her from non-qualifying duties (AR at 104-05) to the AAO, but that is not the same issue as whether she supervised a group of professionals pursuant to 8 C.F.R. § 204.5(j)(4)(i).

Defendant argues that even if the issue of professional employees were properly before the AAO, there is no evidence that the subordinates are actually professionals within the meaning of the statute or the regulations. See Matter of Sea, 19 I&N Dec. 817 (Comm. 1988) ("'Profession,' as defined by section 101(a)(32) of the Act, contemplates knowledge or learning, not merely skill, of an advanced type in a given field gained by a prolonged course of specialized instruction and study of at least baccalaureate level, which is a realistic prerequisite to entry into the particular field of endeavor."). Plaintiff has not shown that a bachelor's degree or any advanced degree is required for these employees. AR at 229-30.

9

Plaintiff also argues that the AAO erred in considering the organizational complexity of the United States company in evaluating Plaintiff's claim, which is not a proper consideration for the managerial or executive capacity determination. The AAO, however, did not rely on organizational complexity or company size in rendering its decision. Instead, the organizational complexity was only cited as a reason for denial of Plaintiff's Petitions at the director level. In any case: "An individual shall not be considered to be acting in a managerial or executive capacity merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed." 8 C.F.R. § 204.5(j)(4).

Accordingly, Plaintiff has not shown that the AAO's decision that Ms. Zhong was not acting primarily in a managerial or executive capacity was arbitrary or capricious.

**Qualifying relationship**

Because the Court has determined that the AAO's decision regarding Ms. Zhong's managerial or executive capacity was not arbitrary or capricious, the Court need not and does not reach the issue of the qualifying relationship.

**CONCLUSION**

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: October 27, 2006

ELIZABETH D. LAPORTE
United States Magistrate Judge